UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| HADI NAJAFI, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | SA-25-CV-1110-FB (HJB) |
| | § | |
| TODD BLANCHE, United States Attorney General; MARKWAYNE MULLIN, Secretary of the Department of Homeland Security; TODD M. LYONS, Acting Director of the U.S. Immigration and Customs Enforcement; LETICIA DIAZ; and WARDEN OF SOUTH TEXAS ICE PROCESSING CENTER, | § | |
| | § | |
| Respondents.[1] | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Petitioner Hadi Najafi's Amended Petition for Writ of Habeas Corpus (Docket Entry 15), and his Motion for Prompt Disposition (Docket Entry 11). This case was referred to the undersigned, and a status conference was held on August 4, 2026. (*See* Docket Entries 18, 19, and 20.) For the reasons below, I recommend that the Motion

[1] Todd Blanche was confirmed as U.S. Attorney General on August 8, 2026. Blanche is therefore substituted for former Attorney General Pamela Bondi as the proper, named Respondent Markwayne Mullin was sworn in on March 24, 2026, as Secretary of Homeland Security. Mullin is therefore substituted for former Secretary of Homeland Security Kristi Noem as the proper, named Respondent.. *See* FED. R. CIV. P. 25(d).

(Docket Entry 11) be **GRANTED**, that the Amended Petition (Docket Entry 15) be **GRANTED IN PART** and **DENIED IN PART**,[2] and that Petitioner be released from Respondents' custody.

**I. Jurisdiction.**

The Court has jurisdiction pursuant to 28 U.S.C. § 2241. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . . challenges to the lawfulness of . . . . continued custody after a deportation order ha[s] become final.") (emphasis omitted). The undersigned has authority to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b).

**II. Background.**

The facts in this case are largely undisputed. Petitioner is a citizen of Iran who entered the United States without inspection near Eagle Pass, Texas on October 12, 2023. (Docket Entry 6-1, at 1.) He was detained and placed in expedited removal proceedings. (*Id.*) A week later, he was charged with improper entry by an alien under 8 U.S.C. § 1325, and transferred to U.S. Marshal custody in Del Rio, Texas. (*Id.*) On November 7, 2023, Petitioner was convicted and sentenced to five months' imprisonment. (*Id.* at 2.) After completing his sentence, Petitioner was transferred back to immigration custody at the South Texas ICE Processing Center in Pearsall, Texas, where he has been incarcerated since May 2024. (Docket Entry 16-1, at 2.)

Petitioner sought asylum in the United States, fearing persecution in Iran on account of his Christian religion. (Docket Entry 15, at 1.) On September 9, 2024, an immigration judge denied his asylum claim and ordered his removal to Iran. (*Id.* at 2.) No appeal was taken by either party.

---

[2] The Petition should be denied in part to the extent Petitioner seeks an award of attorney's fees and costs, under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (*See* Docket Entry 15, at 14). The Fifth Circuit has unequivocally stated that the EAJA "does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions." *Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 553 (2024).

(*Id.*) Immigration Enforcement and Removal Operations ("ERO") submitted a travel request packet for the government of Iran in January 2025, and followed up with ERO headquarters on the packet request in March, June, July, and August of that year. (*Id,* at 4; Docket Entry 6-1, at 2.)

Petitioner sought habeas relief on September 2, 2025, after nearly a year in post-removal immigration custody. (Docket Entry 1.) In February of 2026, the United States entered into armed conflict with Iran, which continues to this day. (Docket Entry 15, at 2.) An advisory filed by Respondents on July 7, 2026, indicates that immigration authorities are still awaiting travel documents from Iran. (Docket Entry 16-1, at 2.) That remained the case at the time of the status conference held on August 4, 2026.

**III. Discussion.**

Petitioner challenges his ongoing detention on two grounds. First, he argues that his ongoing detention violates 8 U.S.C. § 1231, as interpreted by the Supreme Court in *Zadvydas*, 533 U.S. 678. (Docket Entry 15, at 11.) Second, he argues that his ongoing detention violates his Fifth Amendment right to due process. (*Id.* at 12–13.) In this case, the two grounds dovetail into one analysis.

"The Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *A.A.R.P. v. Trump*, 605 U.S. 91, 95 (2025) (citation modified). "Procedural due process rules are meant to protect against the mistaken or unjustified deprivation of life, liberty, or property." *Id.* (citation modified). But for due process purposes, there is a "distinction between an alien who has effected an entry into the United States and one who has never entered" which "runs throughout immigration law." *Zadvydas*, 533 U.S. at 693. "And an alien who is detained shortly after unlawful entry," like Petitioner, "cannot be said to have effected an entry." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (citation modified).

For aliens like Petitioner who have not effected an entry, and who accordingly "have never been naturalized, nor acquired any domicil[e] or residence within the United States, nor even been admitted into the country pursuant to law," due process of law is comprised of no more than "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress." *Thuraissigiam*, 591 U.S. at 138 (citation modified); *cf. United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("[A]liens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with th[e] country."). As Petitioner was not naturalized, a resident within the United States, or admitted into the country, for him "due process is whatever [Respondents are] . . . authorized to do." *Barrientos v. Baltazar*, No. 5:24-CV-5, 2024 WL 5455686, at *5 (S.D. Tex. Dec. 18, 2024), *report and recommendation adopted*, No. 5:24-CV-5, 2025 WL 744703 (S.D. Tex. Mar. 7, 2025); *see Kokoreva v. Unknown Party*, No. 3:25-CV-1700-K-BN, 2025 WL 2981626, at *3 (N.D. Tex. Oct. 7, 2025) (same), *report and recommendation adopted*, No. 3:25-CV-1700-K, 2025 WL 2980642 (N.D. Tex. Oct. 22, 2025). For these reasons, Petitioner's due process claim dovetails into his *Zadvydas* claim: both turn on whether he received the process he was due under 8 U.S.C. §1231—the provision of the INA that governs ongoing detention of aliens who have already been ordered removed.

Section 1231 provides that, "[o]nce an alien is ordered removed, DHS must physically remove him from the United States within a 90-day 'removal period.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (quoting 8 U.S.C. 1231(a)(1)(A)). Subject to exceptions that do not apply here, the removal period begins when "the order of removal becomes 'administratively final.'" *Id.* (quoting 8 U.S.C. § 1231(a)(1)(B)). During the 90-day removal period, detention is mandatory. *Id.* (citing 8 U.S.C. § 1231(a)(2)).

When removal cannot be accomplished during that 90-period, "the Government may continue to detain certain aliens or release them under conditions of supervision." *Abuelhawa v. Noem*, No. 4:25-CV-04128, 2025 WL 2937692, at *4 (S.D. Tex. Oct. 16, 2025) (citing 8 U.S.C. § 1231). Although the statute does not specify a limit on how long DHS may continue to detain an alien after the removal period has lapsed, the Supreme Court has held that such extended detentions may last no longer than is "reasonably necessary to bring about the alien's removal," *see Zadvydas*, 533 U.S. at 689. And recognizing that not all removals can be accomplished within 90 days, the Supreme Court concluded that the Government is presumptively entitled to an additional 90 days to finish the job. *See id.* at 701. Accordingly, post-removal-order detentions are "presumptively reasonable" for up to "six months." *Id.* at 701; *see Mogos v. Thompson*, No. 5:26-CV-740-JKP, 2026 WL 475079, at *3 (W.D. Tex. Feb. 13, 2026) ("Th[e] six-month period includes the 90-day removal period."). Once an alien subject to a final order of removal has been detained for six months, release is required if "there is no significant likelihood of removal in the reasonably foreseeable future." *Guzman Chavez*, 594 U.S. at 529 (citation omitted).

Under *Zadvydas*, Petitioner must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. "Good reason" is a "modest standard." *Mogos*, 2026 WL 475079, at *4. It does not require Petitioner to "rule out 'any prospect of removal—no matter how unlikely or unforeseeable.'" *Id.* (quoting *Zadvydas*, 533 U.S. at 702). If Petitioner provides a good reason to doubt that he will be removed anytime soon, "the Government must respond with evidence sufficient to rebut that showing." *Id.* "This is a fact-intensive inquiry in which the likelihood of release in the foreseeable future shrinks as the post-removal period grows." *Misirbekov v. Venegas*, 796 F. Supp. 3d 436, 439 (S.D. Tex. 2025) (citing *Zadvydas*, 533 U.S. at 701).

Here, Petitioner's 90-day removal period began in December 2024, when his expedited removal order became administratively final. (Docket Entry 15, at 16.) Over the ensuing months, Respondents made attempts to obtain transfer documents from the Iranian government, to no avail. (*See* Docket Entry 6-1; Docket Entry 16-1.) As a result Petitioner has been in post-removal-order detention for nearly two years—far longer than the Supreme Court has held to be presumptively reasonable. And Petitioner has provided the Court with good reason to doubt that his removal is significantly likely in the reasonably foreseeable future. After all, through no fault of Petitioner's, Respondents are still unable to secure the necessary travel documents to remove him to Iran. (*See* Docket Entry 16-1, at 2.)

The burden therefore shifts to Respondents to produce evidence showing that Petitioner's removal is, in fact, significantly likely in the reasonably foreseeable future. They have not done so. Respondents point to their attempts to secure Petitioner's travel documents from the Iranian government, but while such attempts demonstrate Respondents' efforts, they also confirm that removal is unlikely. Respondents offer little else to establish imminent removal, besides their insistence that, once travel documents are received, there are "no known impediments . . . to executing [Petitioner's] removal order." (Docket Entry 6-1, at 2.)

Pending requests for travel documents do not satisfy Respondents' "burden to furnish evidence demonstrating that removal is likely in the reasonably foreseeable future." *Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 706 (W.D. Tex. 2025). What qualifies as the "reasonably foreseeable future" in this case is substantially diminished now that Petitioner already has been detained for far longer than what is presumptively reasonable. *See Zadvydas*, 533 U.S. at 701; *Misirbekov*, 796 F. Supp. 3d at 439 ("[T]he likelihood of release in the foreseeable future shrinks as the post-removal period grows"). In such circumstances, the "potential for a

travel document at some point in the future is not sufficient to justify further detention." *Fermine v. Dir. of Immigr. & Customs Enf't*, No. 2:06-CV-1578, 2007 WL 2284606, at *4 (W.D. La. May 23, 2007) (internal marks omitted). Accordingly, Petitioner is entitled to release pursuant to 8 U.S.C. § 1231 and *Zadvydas*.

## IV. Conclusion and Recommendation.

Based on the foregoing, I recommend that the Amended Petition for a Writ of Habeas Corpus (Docket Entry 15) be **GRANTED IN PART**, and that Petitioner be ordered **RELEASED WITHIN 48 HOURS** of the Court's order, under an order of supervision. I recommend that the petition be **DENIED IN PART** as to Petitioner's request for an award of attorney's fees, which are not available to habeas petitioners. *See Barco v. Witte*, 65 F. 4th 782, 785 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 553 (2024). I further recommend that the Motion for Prompt Disposition (Docket Entry 11) be **GRANTED**, and accordingly that the time period for objection to this Report and Recommendation be shortened as indicated below.[3]

## V. Notice of Right to Object.

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Report and Recommendation must be filed **<u>within 7 days</u>** after being served with a copy of the same, unless this time period is modified by the District Court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties. An objecting party must specifically identify those findings, conclusions, or

[3] At the status conference, Respondents agreed to a truncated objection period.

recommendations to which objections are being made and the basis for such objections; frivolous, conclusory, or general objections may be disregarded. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on August 12, 2026.

Henry J. Bemporad
United States Magistrate Judge